# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | |
|---|---|
| **PNC BANK, NATIONAL ASSOCIATION,** | ) ) ) |
| **Plaintiff,** | ) ) |
| **v.** | ) **Case No.: 2:15-CV-0349-VEH** ) |
| **CEDAR CREEK OF EAST ALABAMA, L.L.C. and LEE D. ROBERSON,** | ) ) ) ) |
| **Defendants.** | ) ) |

## MEMORANDUM OPINION AND ORDER

### I.  Procedural Background

Plaintiff PNC Bank, National Association ("PNC") filed this commercial contract dispute against Defendants Cedar Creek of East Alabama, L.L.C. ("Cedar Creek"), Lee D. Roberson ("Mr. Roberson"), and Scott D. McNay ("Mr. McNay") on February 26, 2015. (Doc. 1). The lawsuit is in federal court on the basis of diversity jurisdiction (*id.* at 2 ¶ 5); (*see also* Doc. 30 (PNC's response to the court's show cause order on subject matter jurisdiction)), and was reassigned to the undersigned on October 20, 2015. (Doc. 26). Mr. McNay was dismissed from this action without prejudice on July 2, 2015, due to his filing of a Chapter 7 bankruptcy petition in the United States Bankruptcy Court for the Middle District

of Alabama. (Docs. 16, 18). Thus, PNC's case remains pending against

Defendants Cedar Creek and Mr. Roberson only.

In its complaint, PNC alleges a claim for breach of contract against Cedar

Creek as the borrower with respect to a loan agreement (encompassing two

separate loans both having a history of debt restructuring) dated September 22,

2004 (the "Loan Agreement"), and a claim for breach of guaranty against Mr.

Roberson, as the "Guarantor" of the Loan Agreement. (Doc. 1 at 9 ¶¶ 26-29

(Count I); *id.* at 10 ¶¶ 30-32 (Count II)). The pleading demands judgment against

Defendants:

> [F]or the total amount of the Obligations, plus interest, costs,
> attorney's fees and such other and further relief, at law or equity, to
> which Plaintiff may be entitled.

(Doc. 1 at 9; *id.* at 10).

Pending before the court is PNC's Motion for Summary Judgment (Doc. 20)

(the "Rule 56 Motion") and supporting brief (Doc. 21), both of which were filed

on August 28, 2015. As evidentiary support, PNC relies upon the affidavit of

Deborah Perry (Doc. 23) (the "Perry Aff.") and its related attachments (Doc. 23-1

(containing Exhibits A-D), Doc. 23-2 (containing Exhibits E-K)) filed on August

31, 2015. The Rule 56 Motion seeks an entry of judgment in favor of PNC and

against Cedar Creek and Mr. Roberson "on a joint and several basis, in an amount

not less than $3,673,217.77, plus accruing interest, including pre- and post-judgment interest, costs and attorney's fees and expenses, and . . . such other and further relief as the Court deems just, proper, and equitable." (Doc. 21 at 19).

In their answer (Doc. 13), Cedar Creek and Mr. Roberson have requested a jury trial. (*Id.* at 6).  On November 18, 2015, PNC filed a Motion To Strike (Doc. 31) (the "Strike Motion") this demand.

Neither Cedar Creek nor Mr. Roberson has opposed PNC's Rule 56 and Strike Motions. Nonetheless, for the reasons set forth below, PNC has failed to meet its initial and affirmative burden of demonstrating the absence of a genuine issue of material fact as well as the presence of standing or personal injury-in-fact and, its Rule 56 Motion is **DENIED WITHOUT PREJUDICE**. The Strike Motion is also **DENIED WITHOUT PREJUDICE** or, alternatively, **TERMED** as **MOOT**.

## II.  Standards

### *Summary Judgment*

Summary judgment is proper only when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. FED. R . CIV. P. 56(c). All reasonable doubts about the facts and all justifiable inferences are resolved in favor of the non-movant. *See Fitzpatrick v. City of*

*Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993) (instructing that "district court should resolve all reasonable doubts about the facts in favor of the non-movant, and draw all justifiable inferences in his [or its] favor" (internal quotation marks omitted) (quoting *United States v. Four Parcels of Real Property*, 941 F.2d 1428, 1438 (11th Cir. 2006) (en banc))). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party*." Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). When, such as here, the moving party is the plaintiff, satisfying this initial Rule 56 burden means "*affirmatively . . . support*[ing] its motion with credible evidence . . . . [and] show[ing] that, on all the essential elements of its case on which it bears the burden of proof at trial, no reasonable jury could find for the non-moving party." *Fitzpatrick*, 2 F.3d at 1115 (citations and internal quotation marks omitted) (emphasis in original) (quoting *Four Parcels*, 941 F.2d at 1438). Only "[o]nce the moving party has properly supported its motion for summary judgment, [does] the burden shift[] to the nonmoving party to 'come forward with specific facts showing that there is a genuine issue for trial.'" *International Stamp Art, Inc. v. U.S. Postal Serv.*, 456 F.3d 1270, 1274 (11th Cir. 2006) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)).

### *Defendants' Failure To Oppose PNC's Rule 56 Motion*

Rule 56(e) of the Federal Rules of Civil Procedure provides:

> **Failing to Properly Support or Address a Fact.** If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may:
>
> > **(1)** give an opportunity to properly support or address the fact;
> >
> > **(2)** consider the fact undisputed for purposes of the motion;
> >
> > **(3)** grant summary judgment if the motion and supporting materials--including the facts considered undisputed--show that the movant is entitled to it; or
> >
> > **(4)** issue any other appropriate order.

FED. R. CIV. P. 56(e). Regardless of these available options in the event of a non-movant's failure to oppose, "[t]he movant … continues to shoulder the initial burden of production in demonstrating the absence of any genuine issue of material fact, and the court must satisfy itself that the burden has been satisfactorily discharged." *Reese v. Herbert*, 527 F.3d 1253, 1268 (11th Cir. 2008) (emphasis added).

As this court has previously stated when the non-movant offers no opposition to a summary judgment motion:

> Thus, although a court may not a grant a motion for summary judgment simply because the motion goes unopposed, it may do so if the moving party has shown that there are no disputed issues of material fact and that it is entitled to judgment as a matter of law. *See, e.g., Vermont Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 246 (2d Cir. 2004) ("Although the failure to respond may allow the district court to accept the movant's factual assertions as true . . . , the moving party must still establish that the undisputed facts entitle him to a judgment as a matter of law."); *see also Custer v. Pan American Life Ins. Co.*, 12 F.3d 410, 416 (4th Cir. 1993) ("Thus, the court, in considering a motion for summary judgment, must review the motion, even if unopposed, and determine from what it has before it whether the moving party is entitled to summary judgment as a matter of law."); *see also* FED. R. CIV. P. 56(e).

*Griffin v. U.S. Postal Serv.*, No. 1:06-CV-0124-VEH (Doc. 29 at 3) (N.D. Ala. Nov. 7, 2008); *see also United States v. One Piece of Real Property*, 363 F.3d 1099 (11th Cir. 2004) ("[T]he district court <u>cannot</u> base the entry of summary judgment on the mere fact that the motion was unopposed, but, rather, must consider the merits of the motion." (emphasis added) (citing *Dunlap v. Transamerica Occidental Life Ins. Co.*, 858 F.2d 629, 632 (11th Cir. 1988) (per curiam))); *One Piece*, 363 F.3d at 1099 ("The district court need not *sua sponte* review all of the evidentiary materials on file at the time the motion is granted, <u>but must ensure that the motion itself is supported by evidentiary materials</u>.") (emphasis added); *Alsina-Ortiz v. Laboy*, 400 F.3d 77, 81 (1st Cir. 2005) (noting that, faced with a record without any opposing facts from non-movant, district

court has discretion to "accept the moving party's allegedly uncontested facts as true, but <u>whether or not this justifies summary judgment for the moving party depends upon the legal and factual configuration that results</u>") (emphasis added) (*Laboy* cited with approval by Eleventh Circuit in *Reese*, 527 F.3d at 1269).

### *Defendants' Failure To Oppose PNC's Strike Motion*

Defendants' failure to contest PNC's Strike Motion likewise does not automatically mean that it will be granted. Instead, in evaluating the merits of the Strike Motion, this court adopts the same standard that it has often used in the analogous situation of a party who fails to oppose a motion to dismiss:

> As noted, Churchill and Howard elected not to be heard in response to BB & T's Amended Motion to Dismiss. Notwithstanding that omission, BB & T (as Rule 12(b)(6) movant) bears the initial burden of demonstrating that it is entitled to dismissal of the counterclaims. Churchill's and Howard's lack of response to the Rule 12(b)(6) Motion does not trigger the kneejerk granting of such Motion on an abandonment theory. *See Gailes v. Marengo County Sheriff's Dep't*, 2013 WL 81227, *5 (S.D. Ala. Jan. 4, 2013) ("the Court will not treat a claim as abandoned merely because the plaintiff has not defended it in opposition to a motion to dismiss"). Rather, it remains BB & T's burden as movant to establish its entitlement to relief under Rule 12(b)(6). In light of these circumstances, the Court scrutinizes BB & T's Motion to Dismiss in accordance with the following legal standard: "<u>the Court will review the merits of the [movant]'s position and, if it is clearly incorrect or inadequate to satisfy the [movant]'s initial burden, will deny the motion despite the [nonmovant]'s failure to respond.</u> If, however, the [movant]'s presentation is adequate to satisfy its initial burden, the Court will not deny the motion based on arguments the [nonmovant] could have

made but by silence elected not to raise." *Id.*

*Branch Banking and Trust Co. v. Howard*, No. 12–0175–WS–N, 2013 WL
172903, at *1 (S.D. Ala. Jan. 16, 2013) (footnotes omitted) (emphasis added).

### III.  Factual Background[1]

First American Bank ("FAB") entered into the Loan Agreement with Cedar
Creek on or about September 22, 2004. AF No. 3;[2] (*see also* Doc. 23-1 at 2-7
(copy of Loan Agreement executed on September 22, 2004, with FAB listed as the
lender)).[3] The Loan Agreement involves two loans from FAB to Cedar Creek. AF

---

[1]  Keeping in mind that, when deciding a motion for summary judgment, the court must
view the evidence and all factual inferences in the light most favorable to the party opposing the
motion, the court provides the following statement of facts. *See Optimum Techs., Inc. v. Henkel
Consumer Adhesives, Inc.*, 496 F.3d 1231, 1241 (11th Cir. 2007) (observing that, in connection
with summary judgment, a court must review all facts and inferences in a light most favorable to
the non-moving party). This statement does not represent actual findings of fact. *See In re
Celotex Corp.*, 487 F.3d 1320, 1328 (11th Cir. 2007). Instead, the court has provided this
statement simply to place the court's legal analysis in the context of this particular case or
controversy.

[2]  Under appendix II of the court's uniform initial order (Doc. 27) entered on October 20,
2015, "[a]ll statements of fact must be supported by specific reference to evidentiary
submissions." (*Id.* at 16). (*See also* Doc. 19-1 at 3 (same)). The designation "AF" stands for
admitted fact and indicates a fact offered by PNC that it has adequately supported through
citations to underlying evidence as appendix II mandates. For Defendants, more specifically, this
means that even though they failed to oppose PNC's Rule 56 Motion in any manner, the court
has independently reviewed the proof (*i.e.*, the Perry Aff. and its attachments) offered by PNC to
establish that proposed fact before accepting it as a fact admitted by Defendants. The court's
numbering of admitted facts (*e.g.*, AF No. 3) corresponds to the numbering of PNC's factual
background as set forth in Doc. 21.

[3]  All page references to Doc. 23-1 correspond with the court's CM/ECF numbering
system.

No. 3; (*see also* Doc. 23-1 at 2). Mr. Roberson signed the Loan Agreement both as a member of Cedar Creek and as a Guarantor. (Doc. 23-1 at 7).

"Loan A" of the Loan Agreement originated on July 14, 2004, in the principal amount of $1,606,735.83. AF No. 4. Loan A has been modified several times with that most recent modification to the underlying note taking place on December 19, 2008. *Id.* The principal amount of indebtedness owed under Loan A as a result of the December 19, 2008, amended note is $1,998,449.33. *Id.*

"Loan B" originated on September 22, 2004, in the principal amount of $1,070,000.00. AF No. 5. Loan B was modified on June 15, 2007. *Id.* The principal amount of indebtedness owed under Loan B as a result of the June 15, 2007, amended note is $1,070,125.00. *Id.* Loan B also has separate underlying loan agreement (the "A&D Loan Agreement"). AF No. 6.

Loan A and Loan B are secured by certain properties (AF No. 7) and also by a Third Party Pledge Agreement (Doc. 23-2 at 39-40)[4] executed by Mr. Roberson in favor of FAB on September 24, 2004. AF No. 8. Mr. Roberson, as a Guarantor, also executed several commercial guaranty documents in connection with this commercial lending arrangement. AF No. 9; (*see also* Doc. 23-2 at 42-53). Each of the guaranty agreements relied upon by PNC designates FAB as the lender

---

[4] All page references to 23-2 correspond with the court's CM/ECF numbering system.

benefitting from the guaranty. (Doc. 23-2 at 42; *id.* at 44; *id.* at 46; *id.* at 48; *id.* at 51).

At some point in time, RBC Bank (USA) ("RBC") apparently became the holder of the note related to the Loan Agreement. (*See* Doc. 23-1 at 35 ("**SECOND ALLONGE TO AMENDED AND RESTATED NOTE**" reflecting "**RBC BANK (USA)**, a North Carolina banking corporation with offices located at 1101 Richmond Avenue, Suite 850, Houston, Texas 77042" as the "Lender")). However, PNC offers no facts showing (and the court cannot otherwise glean from the record) when RBC became a successor in interest to FAB or when PNC became a successor in interest to RBC.

## IV.  Discussion

### *PNC's Rule 56 Motion*

PNC contends that it is entitled to summary judgment on the Loan Agreement executed by Cedar Creek and the various guaranty documents executed by Mr. Roberson as a Guarantor of Cedar Creek's indebtedness. PNC indicates in the introductory sentence of its complaint (Doc. 1 at 1) that it is the successor to RBC, who, in turn, is the successor to FAB. Defendants, in their answer, neither admitted nor denied this statement. (Doc. 10). Instead, Defendants answer that they "are without sufficient knowledge to admit or deny the allegations in

paragraph 1 [which the court construes to include PNC's introductory sentence immediately preceding paragraph 1] of Plaintiff's Complaint and therefore deny same and demand strict proof thereof." (Doc. 13 at 1 ¶ 1).

Within the introductory section of its Rule 56 Motion (Doc. 20 at 1) and its brief (Doc. 21 at 1), PNC again alleges the successor/predecessor relationships shared among it, RBC, and FAB. However, "[s]tatements by counsel in briefs are not evidence[,]" *Skyline Corp. v. N.L.R.B.*, 613 F.2d 1328, 1337 (5th Cir. 1980),[5] and the court cannot accept these bald assertions simply based upon counsel's *ipse dixit*. Instead, to verify the validity of these facts, the court is confined to reviewing the contents of the Rule 56 evidentiary record.[6]

Surprisingly, PNC does not include any evidentiary-based statements about its connection to FAB and RBC within the "**FACTUAL BACKGROUND**" section of its brief. (Doc. 20 at 2-8 ¶¶ 1-25). Further, despite scouring the record for <u>any</u> evidence to substantiate these allegations, including specifically, the Perry Aff. and its numerous exhibits, the court has been unable to adequately confirm the evidentiary validity of these underlying facts that are critical to PNC's Rule 56

---

[5]  In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

[6]  As previously pointed out, in this instance the record lacks a stipulation or admission in Defendants' pleadings that confirms the chain of succession alleged by PNC to exist.

Motion.[7]

Concerning PNC's count for breach of the Loan Agreement by Cedar Creek, "the essential elements of a cause of action for breach of contract are the existence of a valid contract binding the parties, a plaintiff's performance under the contract, a defendant's nonperformance, and damages."[8] *Vision Bank v. 145, LLC*, No. CIV. A. 10-00521-KD-B, 2011 WL 5289070, at *4 (S.D. Ala. Nov. 4, 2011) (citing

-------

[7] The closest that the court came to independently substantiating these facts was with the first and second demand letters sent by legal counsel on behalf of PNC on January 15, 2015. (Doc. 23-2 at 78, 83). However, even these documents are insufficient as they only make a passing reference in the "**Re:**" section to PNC's status "**as successor in interest to First American Bank ('Holder')**" and nowhere mention the link of RBC in the chain of holders ending with PNC. Thus, assuming without deciding that, it would be appropriate for this court to use these the subject section of the demand letters to bolster PNC's otherwise deficiently made Rule 56 Motion (*i.e.*, no assertion of any undisputed facts or inclusion of evidence that demonstrates the complete relevant financial history leading to PNC's status as the valid holder under the lending documents), because the letter only partially establishes certain critical alleged facts PNC still would not be entitled to summary judgment.

[8] Alabama law substantively applies in this instance because:  (1) "[A] federal court in a diversity case is required to apply the laws, including principles of conflict of laws, of the state in which the federal court sits." *Manuel v. Convergys Corp.*, 430 F.3d 1132, 1139 (11th Cir. 2005) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941)), and (2) the Loan Agreement contains a provision specifying that Alabama law applies to its terms. (Doc. 23-1 at 6). "Alabama law has long recognized the right of parties to an agreement to choose a particular state's laws to govern an agreement." *Cherry, Bekaert & Holland v. Brown*, 582 So. 2d 502, 506 (Ala. 1991) (citing *Craig v. Bemis Co.*, 517 F.2d 677 (5th Cir. 1975)). Additionally, "Alabama follows the principle of 'lex loci contractus,' which states that a contract is governed by the laws of the state where it is made except where the parties have legally contracted with reference to the laws of another jurisdiction." *Cherry*, 582 So. 2d at 506. Here, the record, at least inferentially indicates that the Loan Agreement was made in Alabama upon Mr. Roberson's execution of that document on behalf of Cedar Creek as one of its members and as a Guarantor on September 22, 2004 (Doc. 23-1 at 7), and Mr. Roberson's admitted status as a citizen of Alabama. (*See* Doc. 13 at 1 ¶ 3 (admitting PNC's jurisdictional allegations about Mr. Roberson's Alabama citizenship)).

*Jones v. Alfa Mut. Ins. Co.*, 875 So. 2d 1189, 1195 (Ala. 2003)). Similarly, "[e]very suit on a guaranty agreement requires proof of the existence of the guaranty contract, default on the underlying contract by the debtor, and nonpayment of the amount due from the guarantor under the terms of the guaranty." *Sharer v. Bend Millworks Systems, Inc.*, 600 So. 2d 223, 225-26 (Ala. 1992) (internal quotation marks omitted) (quoting *Delro Indus., Inc. v. Evans*, 514 So. 2d 976, 979 (Ala. 1987)).

PNC maintains that all these contractual elements are met in this case contending that the record affirmatively establishes that (i) Cedar Creek entered in the Loan Agreement with the "Lender"; (ii) Mr. Roberson entered into the Guaranty Agreement with the "Lender" for the indebtedness of Cedar Creek; (iii) Cedar Creek defaulted on the underlying Loan Agreement; (iv) Cedar Creek received notice of its default under the Loan Agreement and has refused to pay in accordance with its terms; and (v) Mr. Roberson received notice of Cedar Creek's default and has refused to pay in accordance with his status as a Guarantor of the Loan Agreement. However, PNC seeks summary judgment as the prevailing plaintiff without ever establishing that it (as opposed to FAB or RBC) is the real party in interest or the "Lender" under the operative agreements that it relies upon to establish Defendants' respective contractual liability. PNC, as the plaintiff-

13

movant and as the party invoking the jurisdiction of this court, bears the burden of proof when it comes to demonstrating its contractual standing as the rightful assignee to pursue these claims. Merely making a nominal introductory allegation about a chain of predecessor/successor relationships, without more, does not satisfy this essential substantive as well as jurisdictional element. *See, e.g., Griffin v. Dugger*, 823 F.2d 1476, 1482 (11th Cir. 1987) ("Under elementary principles of standing, a plaintiff must allege and show that he personally suffered injury." (citing *Payne v. Travenol Laboratories, Inc.*, 565 F.2d 895, 898 (5th Cir. 1978))); *Griffin*, 823 F.2d at 1482 ("If [a plaintiff] cannot show personal injury, then no article III case or controversy exists, and a federal court is powerless to hear [its] grievance.").

Further, the absence of any opposition by Defendants does not alter the court's analysis. Instead, PNC'S Rule 56 Motion is fatally flawed with or without any challenge from Defendants for at least two interrelated reasons. First, PNC has not met its burden of affirmatively linking itself to those lending agreements under which it maintains entitlement to judgment as a matter of law–its naked assertion of a plausible, but unproven series of successor-related assignments is simply not enough at the Rule 56 stage. Second, federal subject matter jurisdiction, including the presence of a plaintiff's standing as the real party in interest with respect to the

14

relief being sought, cannot ever be created or waived by the parties. *See, e.g., Morrison v. Allstate Indem. Co.*, 228 F.3d 1255, 1261 (11th Cir. 2000) ("[Subject matter jurisdiction] cannot be created by the consent of the parties, nor supplanted by considerations of convenience and efficiency[.]") (citations omitted).

Thus, the court concludes that the absence of any undisputed facts and/or adequate proof that establishes <u>(i) PNC's status as the rightful successor in holding from RBC; (ii) RBC's status as the rightful successor in holding from FAB; and/or (iii) PNC's standing to pursue these contractual claims</u>, precludes the entry of summary judgment in PNC's favor against Cedar Creek under the Loan Agreement or Mr. Roberson as a Guarantor of the Loan Agreement. Accordingly, PNC's Rule 56 Motion is **DENIED**.

### *PNC's Strike Motion*

As indicated above, Cedar Creek and Mr. Roberson have demanded a jury trial in their answer. However, pointing to mutual provisions included in the Loan Agreement as well as those documents signed by Mr. Roberson as a Guarantor, PNC contends that Defendants have knowingly and voluntarily waived their right to a jury trial.

In taking this position, PNC does not cite to any binding authority that instructs this court on the standards and/or framework to use for evaluating the

validity of contractual waivers that purport to take away this particular

fundamental constitutional right. Instead, PNC relies upon the unpublished

opinion of *Bakrac, Inc. v. Villager Franchise Sys., Inc.*, 164 F. App'x 820 (11th

Cir. 2006), for the general proposition that "[a] party may validly waive its

Seventh Amendment right to a jury trial so long as the waiver is knowing and

voluntary." *Id.* at 823 (citing *Brookhart v. Janis*, 384 U.S. 1, 4-5, 86 S. Ct. 1245,

1246-47, 16 L. Ed. 2d 314 (1966)); *cf. Brookhart*, 384 U.S. at 4, 86 S. Ct. at 1247

("There is a presumption against the waiver of constitutional rights, and for a

waiver to be effective it must be clearly established that there was 'an intentional

relinquishment or abandonment of a known right or privilege.'" (citation omitted)

(quoting *Johnson v. Zerbst*, 304 U.S. 458, 464, 58 S. Ct. 1019, 1023, 82 L. Ed.

1461 (1938))); *cf. also Glasser v. United States*, 315 U.S. 60, 70, 62 S. Ct. 457,

465, 86 L. Ed. 680 (1942), *superceded by rule on other grounds as recognized in*

*Bourjaily v. United States*, 483 U.S. 171, 172, 107 S. Ct. 2775, 2777, 97 L. Ed. 2d

144 (1987) ("To preserve the protection of the Bill of Rights for hard-pressed

defendants, we indulge every reasonable presumption against the waiver of

fundamental rights." (citing *Aetna Ins. Co. v. Kennedy*, 301 U.S. 389, 57 S. Ct.

809, 812, 81 L. Ed. 1177 (1937))).

Further complicating this apparently still open question within the Eleventh

Circuit is that the "[t]he circuits are split as to which party has the burden of proving whether a contractual jury trial waiver, such as the one here, was knowing and voluntary." *Bakrac*, 164 F. App'x at 823 n.1 (citing *Pierce v. Atchison Topeka & Santa Fe Ry. Co.*, 110 F.3d 431, 435 n.4 (7th Cir. 1997));[9] *compare Leasing Serv. Corp. v. Crane*, 804 F.2d 828, 833 (4th Cir. 1986) ("Where waiver is claimed under a contract executed before litigation is contemplated, we agree with those courts that have held that the party seeking enforcement of the waiver must prove that consent was both voluntary and informed."), *and Nat'l Equip. Rental, Ltd. v. Hendrix*, 565 F.2d 255, 258 (2d Cir. 1977) (providing that "the Seventh Amendment right to a jury is fundamental and that its protection can only be relinquished knowingly and intentionally" and further that party seeking to enforce that relinquishment against another must overcome "a presumption [that] exists against its waiver" (citing *Kennedy*, 301 U.S. at 393, 57 S. Ct. at 812), *with K.M.C. Co. v. Irving Trust Co.*, 757 F.2d 752, 758 (6th Cir. 1985) ("[I]n the context of an express contractual waiver the objecting party should have the burden of demonstrating that its consent to the provisions was not knowing and voluntary.").

---

[9] The *Bakrac* unpublished panel did not endeavor to resolve the burden issue, finding that the party who sought to enforce the waiver provision under the facts before it won "regardless of who has the burden." *Id.* at 823 n.1.

On this record, however, the court does not delve any further into the validity *vel non* of the jury waiver provisions identified by PNC as pivotal to its Strike Motion. Instead and consistent with the court's analysis above, because PNC has not established its status as the successor in interest to the Loan Agreement or those obligations undertaken by Mr. Roberson as a Guarantor of the Loan Agreement, it lacks standing to enforce the waiver provisions for its benefit. Accordingly, PNC's Strike Motion is **DENIED WITHOUT PREJUDICE**, or alternatively is **TERMED** as **MOOT**.

## V.  Conclusion

For the reasons stated herein, PNC's Rule 56 Motion is **DENIED WITHOUT PREJUDICE**. Further, PNC's Strike Motion is **DENIED WITHOUT PREJUDICE**, or alternatively is **TERMED** as **MOOT**. The court notes that the deadline for filing dispositive motions expired on November 20, 2015. Normally the court would, by separate order, set this case for a final pretrial conference. However, standing is a precondition for a trial. Therefore, the court **HEREBY ORDERS** PNC to **SHOW CAUSE** within 14 days from the entry date of this order why this case should not be dismissed for lack of standing. If PNC satisfies the court that it has standing, it may ask the court to reconsider this Memorandum Opinion and Order.

18

**DONE** and **ORDERED** this the 16th day of March, 2016.


**VIRGINIA EMERSON HOPKINS**
United States District Judge