IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| PNC BANK, NATIONAL ASSOCIATION, | ) ) ) |
| Plaintiff, | ) ) ) |
| v. | ) Case No.: 2:15-CV-0349-VEH ) |
| CEDAR CREEK OF EAST ALABAMA, L.L.C. and LEE D. ROBERSON, | ) ) ) ) |
| Defendants. | ) ) |

**MEMORANDUM OPINION AND
ORDER ON RECONSIDERATION**

**I.  Introduction and Procedural History**

Plaintiff PNC Bank, National Association ("PNC") filed this commercial contract dispute against Defendants Cedar Creek of East Alabama, L.L.C. ("Cedar Creek"), Lee D. Roberson ("Mr. Roberson"), and Scott D. McNay ("Mr. McNay") on February 26, 2015. (Doc. 1). The only defendants that remain in the case are Cedar Creek and Mr. Roberson.[1]

On March 16, 2016, the court denied PNC's Motion for Summary Judgment (Doc. 20) (the "Rule 56 Motion") and its Motion To Strike Defendants' jury demand

---

[1] Mr. McNay was dismissed from this action without prejudice on July 2, 2015. (Doc. 18).

(Doc. 13) (the "Strike Motion") without prejudice and gave PNC 14 days to show cause why its case should not be dismissed without prejudice for lack of standing. (Doc. 32 at 18). The court indicated in this ruling that "[i]f PNC satisfies the court that it has standing, it may ask the court to reconsider th[e] Memorandum Opinion and Order" that was denied. (Doc. 32 at 18).

Since that decision, PNC has filed a response to the court's show cause order (Doc. 35) and the affidavit of Veto Anna (Doc. 36), including 11 attachments. (Docs. 36-1– 36-11). At the end of its response to the show cause order, PNC requests:

> [T]hat this Court (i) reconsider the March 16, 2016 Order (Doc. 32) and grant PNC's Motion for Summary Judgment (Doc. 20) and (ii) grant such other and further relief as the Court deems just and proper.

(Doc. 35 at 8) (the "Motion To Reconsider"). PNC does not ask the court to reconsider its Motion To Strike Defendants' jury demand.[2] Defendants have not filed anything in response to PNC's additional evidence or its reconsideration request.

Having studied PNC's post-show cause filings, the court now is satisfied that it has standing to pursue the breach of contract claims that are at issue in this case. More specifically, PNC has affirmatively established its status as the "Lender" under the loan and guaranty documents with evidence illustrating the chain of banking

---

[2] On summary judgment, the court expressed some doubts about PNC's ability to prevail on the merits of its Motion To Strike, but ultimately did not reach that issue because of PNC's deficiently demonstrated standing. (Doc. 32 at 15-18).

succession that starts with First American Bank, continues with RBC Bank (USA), and ends with it. (*See* Doc. 36 at 6 ¶ 15 (detailing history of mergers and surviving entities leading to PNC's status as the present "owner and holder of the Loan Documents")).

Further, with this new evidence and the absence of any objection by Defendants, PNC has shown not only good grounds for reconsideration but also that it is entitled to judgment with respect to Defendants' liability under the loan and guaranty documents. Accordingly, PNC's Motion To Reconsider is **GRANTED** and, upon reconsideration, PNC's Rule 56 Motion is **GRANTED** as to liability only with the right of PNC to prove its damages at trial.

## II.   Standards

### A.   Reconsideration

The grant or denial of a motion to reconsider is left to the discretion of the district court. *See Region 8 Forest Serv. Timber Purchasers Council v. Alcock*, 993 F.2d 800, 806 (11th Cir. 1993) (holding that abuse of discretion standard applies "to a district court's grant of a motion for reconsideration of a non-final judgment"); *Chapman v. AI Transport*, 229 F.3d 1012, 1023 (11th Cir. 2000) ("We review the district court's . . . denial of a motion to reconsider summary judgment only for abuse of discretion." (citing *Cavaliere v. Allstate Ins. Co.,* 996 F.2d 1111, 1115 (11th Cir.

1993))). Nonetheless, in the interests of finality and conservation of scarce judicial resources, reconsideration of an order is an extraordinary remedy and is employed sparingly. *See, e.g., United States v. Bailey*, 288 F. Supp. 2d 1261, 1267 (M.D. Fla. 2003); *Pennsylvania Ins. Guar. Ass'n v. Trabosh*, 812 F. Supp. 522, 524 (E.D. Pa. 1992); *Spellman v. Haley*, No. 97-T-640-N, 2004 WL 866837, at *2 (M.D. Ala. Feb. 22, 2002) ("[L]itigants should not use motions to reconsider as a knee-jerk reaction to an adverse ruling." (citing *Richards v. United States*, 67 F. Supp. 2d 1321, 1322 (M.D. Ala. 1999))). Indeed, as a general rule, "[a] motion to reconsider is only available when a party presents the court with evidence of an intervening change in controlling law, <u>the availability of new evidence</u>, or the need to correct clear error or manifest injustice." *Summit Med. Ctr. of Ala., Inc. v. Riley*, 284 F. Supp. 2d 1350, 1355 (M.D. Ala. 2003) (emphasis added). Here PNC's offer of new evidence, especially in the absence of any objection by Defendants, meets this standard.

    **B.    Summary Judgment**

Summary judgment is proper only when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. FED. R . CIV. P. 56(c). All reasonable doubts about the facts and all justifiable inferences are resolved in favor of the non-movant. *See Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993) (instructing that "district court should resolve all reasonable doubts

about the facts in favor of the non-movant, and draw all justifiable inferences in his [or its] favor" (internal quotation marks omitted) (quoting *United States v. Four Parcels of Real Property*, 941 F.2d 1428, 1438 (11th Cir. 2006) (en banc))). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). When, such as here, the moving party is the plaintiff, satisfying this initial Rule 56 burden means "*affirmatively* . . . support[ing] its motion with credible evidence …. [and] show[ing] that, on all the essential elements of its case on which it bears the burden of proof at trial, no reasonable jury could find for the non-moving party." *Fitzpatrick*, 2 F.3d at 1115 (citations and internal quotation marks omitted) (emphasis in original) (quoting *Four Parcels*, 941 F.2d at 1438). Only "[o]nce the moving party has properly supported its motion for summary judgment, [does] the burden shift[] to the nonmoving party to 'come forward with specific facts showing that there is a genuine issue for trial.'" *International Stamp Art, Inc. v. U.S. Postal Serv.*, 456 F.3d 1270, 1274 (11th Cir. 2006) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)).

    **C.**     **Defendants' Failure To Oppose Summary Judgment Initially Or Upon Reconsideration**

Rule 56(e) of the Federal Rules of Civil Procedure provides:

>**Failing to Properly Support or Address a Fact.** If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may:
>
>>**(1)** give an opportunity to properly support or address the fact;
>>
>>**(2)** consider the fact undisputed for purposes of the motion;
>>
>>**(3)** grant summary judgment if the motion and supporting materials--including the facts considered undisputed--show that the movant is entitled to it; or
>>
>>**(4)** issue any other appropriate order.

FED. R. CIV. P. 56(e). Regardless of these available options in the event of a non-movant's failure to oppose, "[t]he movant … continues to shoulder the initial burden of production in demonstrating the absence of any genuine issue of material fact, and <u>the court must satisfy itself that the burden has been satisfactorily discharged</u>." *Reese v. Herbert*, 527 F.3d 1253, 1268 (11th Cir. 2008) (emphasis added).

As this court has previously stated when the non-movant offers no opposition to a summary judgment motion:

>Thus, although a court may not a grant a motion for summary judgment simply because the motion goes unopposed, it may do so if the moving party has shown that there are no disputed issues of material fact and that it is entitled to judgment as a matter of law. *See, e.g., Vermont Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 246 (2d Cir. 2004) ("Although the failure to respond may allow the district court to accept the movant's factual assertions as true . . . , the moving party

6

>   must still establish that the undisputed facts entitle him to a judgment as a matter of law."); *see also Custer v. Pan American Life Ins. Co.*, 12 F.3d 410, 416 (4th Cir. 1993) ("Thus, the court, in considering a motion for summary judgment, must review the motion, even if unopposed, and determine from what it has before it whether the moving party is entitled to summary judgment as a matter of law."); *see also* FED. R. CIV. P. 56(e).

*Griffin v. U.S. Postal Serv.*, No. 1:06-CV-0124-VEH (Doc. 29 at 3) (N.D. Ala. Nov. 7, 2008); *see also United States v. One Piece of Real Property*, 363 F.3d 1099 (11th Cir. 2004) ("[T]he district court <u>cannot</u> base the entry of summary judgment on the mere fact that the motion was unopposed, but, rather, must consider the merits of the motion." (emphasis added) (citing *Dunlap v. Transamerica Occidental Life Ins. Co.*, 858 F.2d 629, 632 (11th Cir. 1988) (per curiam))); *One Piece*, 363 F.3d at 1099 ("The district court need not *sua sponte* review all of the evidentiary materials on file at the time the motion is granted, <u>but must ensure that the motion itself is supported by evidentiary materials</u>.") (emphasis added); *Alsina-Ortiz v. Laboy*, 400 F.3d 77, 81 (1st Cir. 2005) (noting that, faced with a record without any opposing facts from non-movant, district court has discretion to "accept the moving party's allegedly uncontested facts as true, but <u>whether or not this justifies summary judgment for the moving party depends upon the legal and factual configuration that results</u>") (emphasis added) (*Laboy* cited with approval by Eleventh Circuit in *Reese*, 527 F.3d at 1269).

### III.  Factual Background[3]

In its complaint, PNC alleges a claim for breach of contract against Cedar Creek as the borrower with respect to a loan agreement (encompassing two separate loans, AF No. 3,[4] both having a history of debt restructuring) dated September 22, 2004 (the "Loan Agreement"), and a claim for breach of guaranty against Mr. Roberson, as the "Guarantor" of the Loan Agreement. (Doc. 1 at 9 ¶¶ 26-29 (Count I); *id.* at 10 ¶¶ 30-32 (Count II)). PNC, as a successor in interest, entered into the Loan Agreement with Cedar Creek on or about September 22, 2004. (Doc. 21 at 2 ¶ 3). AF No. 3; (*see also* Doc. 23-1 at 2-7 (copy of Loan Agreement executed on

---

[3] Keeping in mind that, when deciding a motion for summary judgment, the court must view the evidence and all factual inferences in the light most favorable to the party opposing the motion, the court provides the following statement of facts. *See Optimum Techs., Inc. v. Henkel Consumer Adhesives, Inc.*, 496 F.3d 1231, 1241 (11th Cir. 2007) (observing that, in connection with summary judgment, a court must review all facts and inferences in a light most favorable to the non-moving party). This statement does not represent actual findings of fact. *See In re Celotex Corp.*, 487 F.3d 1320, 1328 (11th Cir. 2007). Instead, the court has provided this statement simply to place the court's legal analysis in the context of this particular case or controversy.

[4] Under appendix II of the court's uniform initial order (Doc. 27) entered on October 20, 2015, "[a]ll statements of fact must be supported by specific reference to evidentiary submissions." (*Id.* at 16). The designation "AF" stands for admitted fact and indicates a fact offered by PNC that it has adequately supported through citations to underlying evidence as appendix II mandates. For Defendants, more specifically, this means that even though they failed to oppose PNC's Rule 56 Motion in any manner, the court has independently reviewed the proof (*i.e.*, the affidavit of Deborah Perry (Doc. 23), the affidavit of Veto Enna (Doc. 36), and each affidavit's applicable attachments) offered by PNC to establish that proposed fact before accepting it as a fact admitted by Defendants. The court's numbering of admitted facts (*e.g.*, AF No. 3) corresponds to the numbering of PNC's factual background as set forth in Doc. 21.

September 22, 2004)).[5] "Loan A" of the Loan Agreement originated on July 14, 2004, in the principal amount of $1,606,735.83. AF No. 4. Loan A has been modified several times with that most recent modification to the underlying note taking place on December 19, 2008. *Id.* The principal amount of indebtedness owed to PNC under Loan A as a result of the December 19, 2008, amended note is $1,998,449.33. *Id.* As of August 20, 2015, the total amount due under Loan A–including principal, accrued interest, late fees, and other charges–was $2,676,410.89 (the "Loan A Indebtedness"). AF No. 22.

"Loan B" of the Loan Agreement originated on September 22, 2004, in the principal amount of $1,070,000.00. AF No. 5. Loan B was modified on June 15, 2007. *Id.* The principal amount of indebtedness owed to PNC under Loan B as a result of the June 15, 2007, amended note is $1,070,125.00. *Id.* Loan B also has separate underlying loan agreement ("A&D Loan Agreement"). AF No. 6. As of August 20, 2015, the total amount due under Loan B–including principal, accrued interest, late fees, and other charges–was $996,806.88 (the "Loan B Indebtedness").

Loans A and B are secured by certain properties (AF No. 7) and also by a Third Party Pledge Agreement (Doc. 23-2 at 39-40)[6] executed by Mr. Roberson on

---

[5] All page references to Doc. 23-1 correspond with the court's CM/ECF numbering system.

[6] All page references to 23-2 correspond with the court's CM/ECF numbering system.

September 24, 2004. (AF No. 8). Mr. Roberson also executed several commercial guaranty documents in favor of First American Bank, a predecessor institution of PNC. (Doc. 23-2 at 42-53).

Cedar Creek has defaulted on the Loan Agreement by, among other things, failing to pay to PNC the full amounts due on or prior to the maturity date of November 30, 2011.  AF Nos. 16, 17. Mr. Roberson, likewise, has defaulted as the Guarantor of Cedar Creek's loan obligations. AF No. 18.

By letter dated December 5, 2014 (the "First Demand Letter"), PNC notified Defendants of Cedar Creek's default and demanded payment in full. AF No. 19. By a subsequent letter dated January 15, 2015 (the "Second Demand Letter"), PNC, once again, notified Defendants of Cedar Creek's default and demanded payment in full. AF No. 20. Despite sending the First and Second Demand Letters to both Defendants, PNC has not received a payment from either one of them. AF No. 21.

Calculated as of August 20, 2015, the total amount due under the Loan Agreement–Loan A Indebtedness of $2,676,410.89 plus Loan B Indebtedness of $996,806.88–was $3,673,217.77. AF No. 24. Interest, fees, and other charges continue to accrue on the Loan Agreement. AF Nos. 22, 23.

The loan documents also obligate Defendants to pay for reasonable collection costs and expenses, including PNC's attorney's fees that continue to accrue. AF No.

25. PNC has not yet claimed a sum specific for this category of damages (Doc. 21 at 19), much less offered any evidence to quantify that amount.

## IV. Analysis

PNC contends no triable issue exists with respect to Defendants' liability on the defaulted Loan Agreement executed by Cedar Creek and the various guaranty documents executed by Mr. Roberson as a Guarantor of Cedar Creek's indebtedness. Concerning PNC's count for breach of the Loan Agreement by Cedar Creek, "the essential elements of a cause of action for breach of contract are the existence of a valid contract binding the parties, a plaintiff's performance under the contract, a defendant's nonperformance, and damages."[7] *Vision Bank v. 145, LLC*, No. CIV. A.

---

[7] Alabama law substantively applies in this instance because: (1) "[A] federal court in a diversity case is required to apply the laws, including principles of conflict of laws, of the state in which the federal court sits." *Manuel v. Convergys Corp.*, 430 F.3d 1132, 1139 (11th Cir. 2005) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941)), and (2) the Loan Agreement contains a provision specifying that Alabama law applies to its terms. (Doc. 23-1 at 6). "Alabama law has long recognized the right of parties to an agreement to choose a particular state's laws to govern an agreement." *Cherry, Bekaert & Holland v. Brown*, 582 So. 2d 502, 506 (Ala. 1991) (citing *Craig v. Bemis Co.*, 517 F.2d 677 (5th Cir. 1975)). Additionally, "Alabama follows the principle of 'lex loci contractus,' which states that a contract is governed by the laws of the state where it is made except where the parties have legally contracted with reference to the laws of another jurisdiction." *Cherry*, 582 So. 2d at 506. Here, the record, at least inferentially indicates that the Loan Agreement was made in Alabama upon Mr. Roberson's execution of that document on behalf of Cedar Creek as one of its members and as a Guarantor on September 22, 2004 (Doc. 23-1 at 7), and Mr. Roberson's admitted status as a citizen of Alabama. (*See* Doc. 13 at 1 ¶ 3 (admitting PNC's jurisdictional allegations about Mr. Roberson's Alabama citizenship)); (*see also* Doc. 23 at 6 ¶ 14 (indicating that lending documents "provide that they are to be governed by the laws of the State of Alabama and/or were executed in Alabama")).

10-00521-KD-B, 2011 WL 5289070, at *4 (S.D. Ala. Nov. 4, 2011) (citing *Jones v. Alfa Mut. Ins. Co.*, 875 So. 2d 1189, 1195 (Ala. 2003)). Similarly, "[e]very suit on a guaranty agreement requires proof of the existence of the guaranty contract, default on the underlying contract by the debtor, and nonpayment of the amount due from the guarantor under the terms of the guaranty." *Sharer v. Bend Millworks Systems, Inc.*, 600 So. 2d 223, 225-26 (Ala. 1992) (internal quotation marks omitted) (quoting *Delro Indus., Inc. v. Evans*, 514 So. 2d 976, 979 (Ala. 1987)).

PNC maintains that all these contractual elements are met in this case because the record affirmatively establishes that (i) Cedar Creek entered in the Loan Agreement with PNC (as the successor "Lender"); (ii) Mr. Roberson obligated himself to PNC (as the successor "Lender") in his capacity as the Guarantor of the Cedar Creek's indebtedness in the event of its default; (iii) Cedar Creek has defaulted on the underlying Loan Agreement; (iv) Cedar Creek has received notice of its default under the Loan Agreement and has refused to pay in accordance with its terms; and (v) Mr. Roberson has received notice of Cedar Creek's default and has refused to pay in accordance with his status as a Guarantor of the Loan Agreement. Given the stronger factually developed record presently before it on reconsideration of summary judgment, including evidentiary confirmation that PNC is the real lending plaintiff in interest, the undersigned agrees that PNC has satisfied its initial and affirmative

burden of demonstrating the absence of a genuine issue for trial concerning Defendants' contractual liability. Concomitantly, Defendants have made no effort to meet their burden as the non-movants. Consequently, the court's prior denial of PNC's Rule 56 Motion is **HEREBY RECONSIDERED** and, instead, such motion is **GRANTED** with respect to Defendants' contractual liability.

However, because Defendants have demanded a jury and because PNC does not seek reconsideration of the court's decision to deny its efforts to strike that demand, the court (consistent with its customary practice even when a defendant is in default and the plaintiff is the party that demanded the jury trial) will not enter judgment as to PNC's damages. *See* FED. R. CIV. P. 38(d) ("A proper demand may be withdrawn only if the parties consent.") (emphasis added); *cf. Bass v. Hoagland*, 172 F.2d 205, 209 (5th Cir. 1949) (reversing action to enforce a judgment against defendant obtained in another district court by default when "[t]here was appearance and pleading as the summons required, and a demand for jury trial by the plaintiff which operated as a demand by the defendant also unless withdrawn by his consent, which was not given") (emphasis added).[8] Instead, PNC will have the right to prove its contractual damages to a jury unless it can negotiate with Defendants' counsel and

---

[8] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

obtain a suitable consent judgment for the court to enter that covers the damages to be awarded to it in light of the court's foregoing liability determination.

## V.  Conclusion

Thus, PNC's Motion To Reconsider is **GRANTED**. Further, PNC's Rule 56 Motion, upon reconsideration, is **GRANTED** as to Defendants' liability with the right of PNC to: (i) submit to chambers email[9] a consent judgment for the court to enter that has been approved by Defendants' counsel or (ii) separately prove its contractual damages to a jury. The deadline for PNC to submit a proposed consent judgment is no later than **5:00 p.m. on Monday, May 30, 2016**. If no such submission is made then, by separate order, this case will be set for a pretrial conference on the issue of PNC's damages only.

**DONE** and **ORDERED** this the 7th day of April, 2016.

_____
**VIRGINIA EMERSON HOPKINS**
United States District Judge

---

[9] The email address for chambers: hopkins_chambers@alnd.uscourts.gov.