IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| PNC BANK, NATIONAL ASSOCIATION, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) Case No.:  2:15-CV-349-VEH ) |
| CEDAR CREEK OF EAST ALABAMA, L.L.C. and LEE D. ROBERSON, | ) ) ) ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

**I.     Introduction and Procedural Background**

Plaintiff PNC Bank, National Association ("PNC")[1] initiated this contract dispute against Defendants Cedar Creek of East Alabama, L.L.C. ("Cedar Creek"), Lee D. Roberson ("Mr. Roberson"), and Scott D. McNay ("Mr. McNay") on February 26, 2015. (Doc. 1).[2] Mr. McNay was dismissed from this lawsuit without prejudice on July 2, 2015, due to his filing of a Chapter 7 bankruptcy petition in the United States Bankruptcy Court for the Middle District of Alabama. (Docs. 16, 18). Thus,

---

[1] PNC indicates in its complaint (Doc. 1 at 1) that it is the successor to RBC Bank (USA), who in turn is the successor to First American Bank.

[2] The page references to Doc. 1 correspond with the court's CM/ECF numbering system.

PNC's case remains pending against Cedar Creek and Mr. Roberson only.

Because of jurisdictional concerns and other issues, on March 16, 2016, the court denied without prejudice PNC's Motion for Summary Judgment (Doc. 20) (the "Rule 56 Motion") and Motion To Strike Jury Demand (the "Strike Motion").[3] (Doc. 32 at 18). The court also ordered PNC to show cause why its case should not be dismissed for lack of standing. *Id.*

PNC filed its Response to March 16, 2016 Order To Show Cause and Motion To Reconsider (Doc. 35) (the "Response") and a related affidavit (Doc. 36) on March 22, 2016. In its Response, PNC satisfactorily established its rightful standing as the successor in holding under the collection of commercial lending and guaranty agreements and also sought reconsideration of the court's denial of its Rule 56 Motion <u>only</u>. The court granted PNC's reconsideration request on April 7, 2016, and entered summary judgment in favor of PNC as to Defendants' contractual liability. (Doc. 39 at 14). In light of Defendants' still pending jury demand, the court gave PNC until May 30, 2016, to work out a consent judgment with Defendants or, in the absence of such a submission, to appear at a pretrial conference (that would be set by separate order) so that PNC's damages could be scheduled for a jury trial. *Id.*

Now pending before the court is PNC's second Motion To Reconsider and

---

[3] The court alternatively termed PNC's Strike Motion as moot. (Doc. 32 at 18).

Renewed Motion To Strike Jury Demand (Doc. 40) (the "Renewed Motion") filed on May 5, 2016. The Renewed Motion seeks, once again, to enforce jury waivers agreed to by Defendants and to "grant such other and further relief as the Court deems just and proper." (Doc. 40 at 16). Neither Cedar Creek nor Mr. Roberson has opposed PNC's Renewed Motion.

Based upon PNC's more developed arguments contained in its Renewed Motion and, in the absence of any opposition from Defendants, the Renewed Motion is **GRANTED** and the jury demand made by Defendants in their answer (Doc. 13 at 6) is, upon reconsideration, **HEREBY STRICKEN**.

## II.    Standard on Defendants' Failure To Oppose PNC's Renewed Motion

Defendants' failure to file any opposition to PNC's Renewed Motion does not automatically mean that PNC's jury-related relief will be granted. Instead, in evaluating the merits of the Renewed Motion, this court adopts the same standard that it has often used in the analogous situation of a non-moving party who fails to oppose a motion to dismiss:

> As noted, Churchill and Howard elected not to be heard in response to BB & T's Amended Motion to Dismiss. Notwithstanding that omission, BB & T (as Rule 12(b)(6) movant) bears the initial burden of demonstrating that it is entitled to dismissal of the counterclaims. Churchill's and Howard's lack of response to the Rule 12(b)(6) Motion does not trigger the kneejerk granting of such Motion on an abandonment theory. *See Gailes v. Marengo County Sheriff's*

> *Dep't*, 2013 WL 81227, *5 (S.D. Ala. Jan. 4, 2013) ("the Court will not treat a claim as abandoned merely because the plaintiff has not defended it in opposition to a motion to dismiss"). Rather, it remains BB & T's burden as movant to establish its entitlement to relief under Rule 12(b)(6). In light of these circumstances, the Court scrutinizes BB & T's Motion to Dismiss in accordance with the following legal standard: "the Court will review the merits of the [movant]'s position and, if it is clearly incorrect or inadequate to satisfy the [movant]'s initial burden, will deny the motion despite the [nonmovant]'s failure to respond. If, however, the [movant]'s presentation is adequate to satisfy its initial burden, the Court will not deny the motion based on arguments the [nonmovant] could have made but by silence elected not to raise." *Id.*

*Branch Banking and Trust Co. v. Howard*, No. 12–0175–WS–N, 2013 WL 172903, at *1 (S.D. Ala. Jan. 16, 2013) (footnotes omitted).

## III.  Analysis

PNC relies upon various provisions containing jury waiver language in support of its Renewed Motion. The court discusses them below.

### A.   Jury Waiver Provisions Relating to Cedar Creek

The first jury waiver provision that PNC points to is a mutual one within the Loan A Promissory Note dated June 15, 2007, between PNC and Cedar Creek:

> **JURY WAIVER   Lender and Borrower hereby waive the right to any jury trial in any action, proceeding, or counterclaim brought by either Lender or Borrower against the other**[.]

(Doc. 36-2 at 11).[4] Loan B Promissory Note dated June 15, 2007, contains the same

---

[4] All page references to Doc. 36-2 correspond with the court's CM/ECF numbering system.

mutually enforceable waiver language. (Doc. 36-3 at 9).[5]

Further, the Amended and Restated Note dated December 19, 2008, has a jury waiver provision that states in bold and capitalized letters:

> **TO THE EXTENT PERMITTED BY LAW MAKER HEREBY AGREES NOT TO ELECT A TRIAL BY JURY OF ANY ISSUE TRIABLE OF RIGHT BY JURY, AND WAIVES ANY RIGHT TO TRIAL BY JURY FULLY TO THE EXTENT THAT ANY SUCH RIGHT SHALL NOW OR HEREAFTER EXIST WITH REGARD TO THIS NOTE OR THE OTHER LOAN DOCUMENTS, OR ANY CLAIM, COUNTERCLAIM OR OTHER ACTION ARISING IN CONNECTION THEREWITH INCLUDING, BUT NOT LIMITED TO THOSE RELATING TO (A) ALLEGATIONS THAT A PARTNERSHIP EXISTS BETWEEN PAYEE AND MAKER; (B) USURY OR PENALTIES OR DAMAGES THEREFOR; (C) ALLEGATIONS OF UNCONSCIONABLE ACTS, DECEPTIVE TRADE PRACTICE, LACK OF GOOD FAITH OR FAIR DEALING, LACK OF COMMERCIAL REASONABLENESS, OR SPECIAL RELATIONSHIPS (SUCH AS FIDUCIARY, TRUST OR CONFIDENTIAL RELATIONSHIP); (D) ALLEGATIONS OF DOMINION, CONTROL, ALTER EGO, INFLUENCE, INTERFERENCE OR NEGLIGENCE; (E) ALLEGATIONS OF TORTIOUS INTERFERENCE WITH PRESENT OR PROSPECTIVE BUSINESS RELATIONSHIPS OR OF ANTITRUST; OR (F) SLANDER, LIBEL OR DAMAGE TO REPUTATION. THIS WAIVER OF RIGHT TO TRIAL BY JURY IS GIVEN KNOWINGLY AND VOLUNTARILY BY MAKER, AND IS INTENDED TO ENCOMPASS INDIVIDUALLY EACH INSTANCE AND EACH ISSUE AS TO WHICH THE RIGHT TO A TRIAL BY JURY WOULD OTHERWISE ACCRUE. PAYEE IS HEREBY AUTHORIZED TO FILE A COPY OF THIS PARAGRAPH IN ANY PROCEEDING AS CONCLUSIVE**

---

[5] All page references to Doc. 36-3 correspond with the court's CM/ECF numbering system.

**EVIDENCE OF THIS WAIVER BY MAKER.**

(Doc. 36-2 at 22).

Similarly, § 15.2 of the A&D Loan Agreement includes a descriptive heading and explains with emphasis:

> **Waiver of Right to Trial by Jury.** TO THE EXTENT PERMITTED BY LAW BORROWER HEREBY AGREES NOT TO ELECT A TRIAL BY JURY ON ANY ISSUE TRIABLE OF RIGHT BY JURY, AND WAIVES ANY RIGHT TO TRIAL BY JURY FULLY TO THE EXTENT THAT ANY SUCH RIGHT SHALL NOW OR HEREAFTER EXIST WITH REGARD TO THIS AGREEMENT, THE SECURITY INSTRUMENT, OR ANY OTHER LOAN DOCUMENTS, OR ANY CLAIM, COUNTERCLAIM OR OTHER ACTION ARISING IN CONNECTION HEREWITH OR THEREWITH THIS WAIVER OF RIGHT TO TRIAL BY JURY IS GIVEN KNOWINGLY AND VOLUNTARILY BY BORROWER, AND AFTER CONSULTATION WITH AN ATTORNEY SELECTED BY BORROWER, AND IS INTENDED TO ENCOMPASS INDIVIDUALLY EACH INSTANCE AND EACH ISSUE AS TO WHICH THE RIGHT TO A TRIAL BY JURY WOULD OTHERWISE ACCRUE LENDER IS HEREBY AUTHORIZED TO FILE A COPY OF THIS SECTION IN ANY PROCEEDING AS CONCLUSIVE EVIDENCE OF THIS WAIVER BY BORROWER.

(Doc. 36-4 at 17).[6] This section of the A&D Agreement further reflects that Mr. Roberson and Mr. McNay both initialed it on behalf of Cedar Creek. *Id.*

---

[6] All page references to Doc. 36-4 correspond with the court's CM/ECF numbering system.

### B. Jury Waiver Provisions Relating to Mr. Roberson

Documents applicable to Mr. Roberson's status as a guarantor of PNC's commercial loans to Cedar Creek also include jury waiver provisions. For example, at the very end of § 12 of the Guaranty Agreement dated July 14, 2004, Mr. Roberson "waive(s) the right to a trial by jury in any action based on or pertaining to this guaranty." (Doc. 36-7 at 3).[7] Identical waiver language is incorporated into the Guaranty Agreements dated September 22, 2004. (Doc. 36-7 at 5, 7).

The two Guaranty Agreements dated June 15, 2007, have mutually enforceable and more conspicuous waiver provisions that explain in bold:

> **Waive Jury   Lender and Guarantor hereby waive the right to any jury trial in any action, proceeding, or counterclaim brought by either Lender or Guarantor against the other**[.]

(Doc. 36-7 at 9, 12).

### C. The Jury Waiver Provisions Are Enforceable against Both Defendants under the Circumstances of this Particular Case.

"[T]he right to a jury trial in the federal courts is to be determined as a matter of federal law in diversity as well as other actions." *See Simler v. Conner*, 372 U.S. 221, 222, 83 S. Ct. 609, 610, 9 L. Ed. 2d 691 (1963); *see also Phillips v. Kaplus*, 764 F.2d 807, 812 (11th Cir. 1985) ("[T]he right to a jury trial in the federal court is to be

---

[7] All page references to Doc. 36-7 correspond with the court's CM/ECF numbering system.

determined as a matter of federal law.").

"A party may validly waive its Seventh Amendment right to a jury trial so long as the waiver is knowing and voluntary." *Bakrac, Inc. v. Villager Franchise Sys., Inc.*, 164 F. App'x 820, 823 (11th Cir. 2006) (citing *Brookhart v. Janis*, 384 U.S. 1, 4-5, 86 S. Ct. 1245, 1246-47, 16 L. Ed. 2d 314 (1966)); *see also Brookhart*, 384 U.S. at 4, 86 S. Ct. at 1247 ("There is a presumption against the waiver of constitutional rights, and for a waiver to be effective it must be clearly established that there was "'an intentional relinquishment or abandonment of a known right or privilege.'" (citation omitted) (quoting *Johnson v. Zerbst*, 304 U.S. 458, 464, 58 S. Ct. 1019, 1023, 82 L. Ed. 1461 (1938))); *cf. also Glasser v. United States*, 315 U.S. 60, 70, 62 S. Ct. 457, 465, 86 L. Ed. 680 (1942), *superceded by rule on other grounds as recognized in Bourjaily v. United States*, 483 U.S. 171, 172, 107 S. Ct. 2775, 2777, 97 L. Ed. 2d 144 (1987) ("To preserve the protection of the Bill of Rights for hard-pressed defendants, we indulge every reasonable presumption against the waiver of fundamental rights." (citing *Aetna Ins. Co. v. Kennedy*, 301 U.S. 389, 57 S. Ct. 809, 812, 81 L. Ed. 1177 (1937))).

As this court previously pointed out when it denied PNC's first efforts to strike Defendants' jury demand:

> Further complicating this apparently still open question within the

Eleventh Circuit is that the "[t]he circuits are split as to which party has the burden of proving whether a contractual jury trial waiver, such as the one here, was knowing and voluntary." *Bakrac*, 164 F. App'x at 823 n.1 (citing *Pierce v. Atchison Topeka & Santa Fe Ry. Co.*, 110 F.3d 431, 435 n.4 (7th Cir. 1997)); *compare Leasing Serv. Corp. v. Crane*, 804 F.2d 828, 833 (4th Cir. 1986) ("Where waiver is claimed under a contract executed before litigation is contemplated, we agree with those courts that have held that the party seeking enforcement of the waiver must prove that consent was both voluntary and informed."), *and Nat'l Equip. Rental, Ltd. v. Hendrix*, 565 F.2d 255, 258 (2d Cir. 1977) (providing that "the Seventh Amendment right to a jury is fundamental and that its protection can only be relinquished knowingly and intentionally" and further that party seeking to enforce that relinquishment against another must overcome "a presumption [that] exists against its waiver" (citing *Kennedy*, 301 U.S. at 393, 57 S. Ct. at 812), *with K.M.C. Co. v. Irving Trust Co.*, 757 F.2d 752, 758 (6th Cir. 1985) ("[I]n the context of an express contractual waiver the objecting party should have the burden of demonstrating that its consent to the provisions was not knowing and voluntary.").

On this record, however, the court does not delve any further into the validity *vel non* of the jury waiver provisions identified by PNC as pivotal to its Strike Motion. Instead and consistent with the court's analysis above, because PNC has not established its status as the successor in interest to the Loan Agreement or those obligations undertaken by Mr. Roberson as a Guarantor of the Loan Agreement, it lacks standing to enforce the waiver provisions for its benefit. Accordingly, PNC's Strike Motion is **DENIED WITHOUT PREJUDICE**, or alternatively is **TERMED** as **MOOT**.

(Doc. 32 at 17-18 (footnote omitted)).

Now this court must delve further into the open question of enforcing contractual jury trial waivers within the Eleventh Circuit. Following the Sixth Circuit's approach in *Irving*, the court easily concludes that the express jury trial

9

waivers are enforceable under that authority because neither Defendant has offered <u>anything</u> to show that its or his consent to the waiver was <u>not</u> done knowingly or voluntarily. Thus, in the absence of Defendants' carrying their burden as the objecting parties, Defendants' jury demand is due to be stricken in light of the unchallenged jury waiver provisions.

The court would reach the same conclusion if it followed those circuits who have placed the burden to show that the opposing party's consent was both knowing and voluntary on the party seeking to enforce the waiver provision. Specifically, the court finds that, on this record, PNC has satisfied that standard. When evaluating whether a party has met this burden the *Bakrac* unpublished panel, relying upon the Fourth Circuit's opinion in *Leasing Service Corp. v. Crane*, 804 F.2d 828, 833 (4th Cir. 1986), indicated that "courts consider the conspicuousness of the waiver provision, the parties' relative bargaining power, the sophistication of the party challenging the waiver, and whether the terms of the contract were negotiable."[8] *Bakrac*, 164 F. App'x at 824.

---

[8] To the extent that it is appropriate for this court to consider whether Alabama law would enforce these jury waiver provisions (Doc. 40 at 8 n.3), the factors to apply are comparable to what *Bakrac* describes. More specifically, the Supreme Court of Alabama has "articulated three factors to consider in evaluating whether to enforce a contractual waiver of the right to trial by jury: (1) whether the waiver is buried deep in a long contract; (2) whether the bargaining power of the parties is equal; and (3) whether the waiver was intelligently and knowingly made." *Ex parte BancorpSouth Bank*, 109 So. 3d 163, 166 (Ala. 2012).

In particular, PNC has shown that Cedar Creek and Mr. Roberson executed multiple loan and/or guaranty documents that included jury trial waivers. While some of those provisions were drafted more conspicuously than others, the repeated inclusion of a jury trial waiver as part of the contracts presented, for the most part,[9] in a non-buried format means that PNC has shown that Cedar Creek and Mr. Roberson knowingly consented to that requirement. (Doc. 40 at 11). *See, e.g., Oglesbee v. IndyMac Fin. Servs., Inc.*, 675 F. Supp. 2d 1155, 1158 (S.D. Fla. 2009) ("The waiver is not buried in the middle of a lengthy paragraph without distinction, but is set off as its own paragraph and conspicuously labeled 'Jury Trial Waiver.'").

Concerning bargaining power, the court agrees with PNC that this case does not appear to be one in which "there was a gross disparity in bargaining position." *Oglesbee*, 675 F. Supp. 2d at 1158. "A gross disparity in bargaining power only exists when a party is forced to accept the terms of an agreement as written; the party is unable to simply walk away if the terms are unacceptable." *Id.* Here, PNC has not offered any evidence about the ability of Cedar Creek and Mr. Roberson "to walk away" from the commercial agreements. However, certain documentary evidence facially shows the lack of PNC's lopsided bargaining position over Defendants

---

[9] The jury waiver provisions agreed to by Mr. Roberson in 2004 could be considered buried language, but the later ones in 2007 are transparently drafted.

11

concerning the issue of jury trials–several of the jury waiver provisions were <u>mutually</u> enforceable. This mutuality signifies equality in bargaining power, rather than an extreme unfair advantage for the benefit of PNC. Thus, in the absence of uniform one-sidedness over this potentially unacceptable contractual term, the court finds that the bargaining power factor favors enforcing the jury trial waivers.

Concerning the third factor–Defendants' sophistication and ability to understand the nature of the provisions–PNC has indicated that, on information and belief, Mr. Roberson "is a cardiac and thoracic surgeon and the president and sole owner of East Alabama Cardiac & Thoracic Surgery, P.C." (Doc. 40 at 13). PNC further logically suggests that, "[a]s a heart surgeon and a small business owner, [Mr.] Roberson clearly has whatever necessary education and level of sophistication that could be required to understand the effect of the Jury Waivers [to the extent that any of them are worded in an ambiguous manner]." (Doc. 40 at 13). Neither Mr. Roberson nor Cedar Creek (who both are still represented by counsel) has disputed these representations made by PNC on the record, and the court finds them to weigh in favor of enforcing the jury trial waivers.

Finally, the last factor–the negotiability of the waivers–appears to weigh against enforcing them simply because PNC has not offered any evidence to show that these provisions were, in fact, subject to negotiation here or, at least, that they

have been negotiated in other comparable commercial lending relationships. (Doc. 40 at 14). Instead, PNC seems to place the burden back on Defendants to show that the waivers were non-negotiable. *See id.* ("[N]othing in the records indicates that the Defendants could not have negotiated with PNC regarding the jury waivers."). Nonetheless even without the benefit of the fourth factor, the balance of the other factors favors enforcing the waivers and, akin to *Bakrac*, this court does not reach a determination of which way the Eleventh Circuit ultimately will go because PNC "prevails regardless of who has the burden." *Bakrac*, 164 F. App'x at 823 n.1; (Doc. 40 at 9).

**IV. Conclusion**

For the reasons stated above, PNC's Renewed Motion is **GRANTED** and Defendants' jury demand is **HEREBY STRICKEN**. Accordingly, and with substantive liability already established against Defendants, PNC is entitled to recover from Cedar Creek and Mr. Roberson, jointly and severally, the outstanding principal, interest, and other fees, as set forth under the terms of the various loan and guaranty agreements, which calculations, previously provided to the court as of August 28, 2015, are to be supplemented by PNC and filed in the form of a proposed order of final judgment, no later than 5:00 p.m. on June 20, 2016, with a copy[10]

---

[10] Preferably in WordPerfect format.

submitted to the court via chambers email: hopkins_chambers@alnd.uscourts.gov. Any objections to PNC's calculations are due 7 days after the proposed order of final judgment is filed into the record. At the end of such 7 day period, the proposed order will be under submission and final judgment in favor of PNC and against Cedar Creek and Mr. Roberson will be entered shortly thereafter.

    **DONE** and **ORDERED** this the 13th day of June, 2016.

                                       **VIRGINIA EMERSON HOPKINS**
                                       United States District Judge